IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:24-cv-01608-DDD-NRN

CENTER FOR BIOLOGICAL DIVERSITY,

    Plaintiff,

v.

KEITH E. BERGER, in his official capacity as Field Manager for the U.S. Bureau of Land Management's Royal Gorge Field Office, and BUREAU OF LAND MANAGEMENT,

    Defendants.

## ORDER GRANTING MOTION TO DISMISS

Plaintiff in this case is a national nonprofit conservation organization with offices throughout the United States. It brings this action against Defendants Bureau of Land Management ("BLM") and Field Manager Keith Berger on behalf of its members, alleging that BLM's refusal to impose environmental mitigation measures on drill sites located on private land violates the Administrative Procedure Act and impairs its members' ability to enjoy the nearby Pawnee National Grassland. Defendants have moved to dismiss Plaintiff's petition. Because the petition, as pled, does not adequately connect the injury asserted with Defendants' challenged actions, Plaintiff has failed to carry its burden to show that it has standing and that this case is consistent with Article III's mandate that the federal courts only hear actual "cases" or "controversies." Defendant's motion to dismiss is therefore granted, and Plaintiff is given leave to amend its complaint consistent with this decision.

## BACKGROUND

"This case challenges a set of BLM decisions concerning oil and gas development in northeastern Colorado from 'Fee/Fee/Fed' wells, which are wells that use directional drilling to extract federal minerals from neighboring private or state surface lands." Dkt. 1 ¶ 1. "The use of Fee/Fee/Fed wells has surged in Colorado over the past decade due to advances in directional drilling technology." *Id.* ¶ 3. "Whereas federal oil and gas leases were traditionally developed from vertical wells located atop the federal lease itself, directional drilling and the checkerboard ownership pattern of public lands now allows developers to tap federal minerals from adjacent private or state lands." *Id.*

In this suit, "Petitioner Center for Biological Diversity challenges three decisions of Respondents BLM and Field Manager Keith E. Berger approving a total of 26 Applications for Permit to Drill ("APD") federal oil and gas deposits from Fee/Fee/Fed wells in Weld County, Colorado." *Id.* ¶ 1. "Petitioner also challenges BLM Permanent Instruction Memorandum 2018-14, which governs the approval and development of Fee/Fee/Fed wells, including the Colorado APD Decisions challenged here." *Id.*

Permanent Instruction Memorandum 2018-14, titled "Directional Drilling into Federal Mineral Estate from Well Pads on Non-Federal Locations," "purports to strip BLM officials of the power to regulate surface operations associated with Fee/Fee/Fed wells, including to reduce air emissions, water and soil contamination, wildlife disruptions, noise and visual intrusions, and other impacts." *Id.* ¶ 2. "It also relieves Fee/Fee/Fed well developers of ordinary bonding, reporting, and operating requirements." *Id.* Plaintiff argues this "allows private developers to

reap the benefits of extracting public minerals without assuming the burden of properly mitigating the resulting harms." *Id.*

One of the areas where Fee/Fee/Fed well development and fracking has seen an increase in recent years is the Pawnee National Grassland. *Id.* ¶ 5. "This 300-square-mile landscape of interspersed federal public and private lands is a popular northern Colorado recreation destination for residents in the northern Front Range." *Id.* "It contains some of the country's last remaining native shortgrass prairie and is a renowned bird and wildlife viewing destination." *Id.* Because of Permanent Instruction Memorandum 2018-14, Plaintiff alleges, "the intensifying oil and gas development in and around the Grassland occurs with minimal BLM oversight to reduce harms to wildlife, air and water, dark night skies, and the aesthetic and visual character of the Grassland." *Id.* "Two of the challenged Colorado APD Decisions are located in the Grassland." *Id.*

Plaintiff alleges that the "development of Fee/Fee/Fed wells without [environmental] protections has and will continue to injure the aesthetic, recreational, and other interests of Petitioner's staff, members, and supports in myriad ways, including by increasing their risk of exposure to harmful air pollutants; depleting bird and wildlife populations they enjoy viewing; increasing smog and light pollution that blurs daytime vistas and dark night skies; and increasing the unsightly visual and noise impacts of oil and gas development in areas they use and enjoy, among other harms." *Id.* ¶ 18.

As relevant here, Plaintiff alleges that one of its members, Jeremy Nichols, "resides in Lakewood, Colorado, and has a long history recreating in the prairie lands of eastern Colorado." *Id.* ¶ 21. "Nichols has visited the Pawnee National Grassland on a regular, at least annual, basis, for many years and plans to continue his regular visits in the future."

- 3 -

*Id*. "He cherishes the area as some of the best public lands for visiting and appreciating natural prairie ecosystems in Colorado." *Id*. "Nichols has experienced first-hand how oil and gas development has already harmed segments of the Pawnee National Grassland area, including by degrading natural scenery; introducing heavy equipment traffic, dust, and noise; resulting in unsightly and polluting surface spills; and noticeably decreasing the number of wildlife and birds he encounters." *Id*. "Encountering these impacts of the Colorado APD Decisions on return would diminish his recreational and aesthetic enjoyment." *Id*.

Another of Plaintiff's members, Robert Ukeiley, "is a member of the Center who resides in Boulder County, Colorado, and regularly visits the Pawnee National Grassland." *Id*. ¶ 22. "Ukeiley has for years participated in volunteer outings to carry out environmental restoration work in the Grassland." *Id*. Plaintiff alleges "Ukeiley is injured by oil and gas development because of its impacts on native birds, wildlife, insects, and plant species he values seeing when visiting the grassland." *Id*. "He is concerned about the impacts of oil and gas drilling on the prevalence of native bird, wildlife, plant, and insect populations in the Grassland, and his ability to see them on return visits, and he is concerned about the effect of oil and gas production on the spread of nonnative plant species that incur into important areas of glue grama and other critical native grasses." *Id*. "The visits of Nichols, Ukeiley, and other of Petitioner members take them to areas in proximity to the drilling sites of the Colorado APD Decisions as well as areas each Colorado APD Decision will adversely impact." *Id*. ¶ 24.

Plaintiff filed suit in this case on June 10, 2024, alleging that both Permanent Instruction 2018-14 and the related APD approvals near the Pawnee National Grassland were issued in violation of the APA. Dkt. 1. Defendants moved to dismiss on September 6, 2024, alleging that

Plaintiff has both failed to state a claim and to provide allegations that show it has standing to bring suit in the first place. Dkt. 9. Bison Oil & Gas IV, LLC and Verdad Resources LLC, the owners of some of the APDs challenged in this case, have also filed motions to intervene. Dkt. 10; 11.

## APPLICABLE LAW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) requires a court to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). In doing so, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). A court will "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* At this stage, the well-pleaded facts underlying a plaintiff's allegations must articulate a viable legal claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555.

## DISCUSSION

Plaintiff's petition, as pled, does not provide the necessary nexus between the injury claimed and the legal wrong alleged to satisfy the foundational requirements of Article III standing. Though the harm asserted—loss of enjoyment of the Pawnee National Grasslands—is sufficient in concept to satisfy Article III's injury in fact requirement, Plaintiff has not adequately connected it to BLM Permanent Instruction Memorandum 2018-14 or Defendants' allegedly illegal drill site approvals for this case to move forward at this time.

### I. The doctrine of standing

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024). These constitutional limits and the corresponding doctrine of standing that gives shape to them imply that "Federal courts do not possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A plaintiff must show he has actually suffered a concrete injury in order "to get in the federal courthouse door and obtain a judicial determination of what the governing law is;" speculative and theoretical injuries are not enough. *All. for Hippocratic Med.*, 602 U.S. at 379 ("Nor do federal courts operate as a general forum for citizens to press general complaints about the way in which government goes about its business." (quotations omitted)). In other words, "[a]s Justice Scalia memorably said, Article III requires a plaintiff to first answer a basic question: 'What's it to you?'" *Id.* (quoting A. Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U.L. Rev. 881, 882 (1983)); *see also Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of

federal-court jurisdiction to actual cases or controversies." (quotations omitted)).

In order to make this preliminary showing and meet the "irreducible constitutional minimum of standing," a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (quotations omitted). The "plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id*. "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id*. (cleaned up).

The first factor, whether a plaintiff has suffered an injury in fact, turns on whether he has alleged "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). "As a general rule . . . environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1155 (10th Cir. 2013) (quotations omitted). An organization has standing "when its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires individual members' participation in the lawsuit." *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

The second factor, whether the injury is fairly traceable to the defendant's challenged action, turns on whether the plaintiff has shown a "substantial likelihood that the defendant's conduct caused the

plaintiff's injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). A plaintiff "bear[s] the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).

As to the third factor, redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (cleaned up). "A showing that the relief requested *might* redress the plaintiff's injuries is generally insufficient to satisfy the redressability requirement." *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012).

## II. Plaintiff has not adequately connected its injury to Defendants' allegedly illegal actions

The primary question presented by Defendants' motion is whether Plaintiff has carried its burden to show that its members have standing to sue for the violations of law alleged in the petition.[1] *See Dine Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831, 840 (10th Cir. 2019) (a plaintiff must show that "the increased risk of environmental harm injures the litigant's concrete interests by demonstrating either

---

[1] The doctrine of associational standing also asks 1) whether the interests asserted in a matter are germane to the association's mission and 2) whether individuals would need to personally participate in the lawsuit in order for the association to effectively litigate its claims. Neither of these elements are disputed by Defendants in this case, and while one may fairly question, as a general matter, whether it is appropriate to say that an association with "over 79,143 members" has met its burden when its standing is based on injuries to just two of its members, *see* Dkt. 1 ¶ 16; *All. for Hippocratic Med.*, 602 U.S. at 399 ("Associational standing raises constitutional concerns by relaxing both the injury and redressability requirements for Article III standing.") (Thomas, J., concurring), as it currently stands, associational standing is the law of the land.

- 8 -

its geographical nexus to, or actual use of the site of the agency action") (quotation marks omitted); *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1246 (10th Cir. 2021) ("The appellate courts have recognized that a plaintiff may lack standing to challenge actions by a too-distant polluter."). It has not.

Though Plaintiff's asserted injury is of the type that courts have found satisfies Article III's injury-in-fact requirement in other cases involving conservation groups alleging environmental harm, *see, e.g.*, *Utah Physicians*, 21 F.4th at 1241 (finding similar allegations sufficient to show injury in fact), Plaintiff has not shown enough of a geographic nexus between that injury and the claims asserted here to carry its burden to show the two other features mandated by the doctrine of standing: causation and redressability.[2]

As to causation, Plaintiff has alleged that "the visits of Nichols, Ukeiley, and other of Petitioner members take them to areas in proximity to the drilling sites of the Colorado APD Decisions." Dkt. 1 ¶ 24. But this statement is conclusory; it merely alleges the inference I would need to reach were I to find that Plaintiff's injury was caused by Defendants' conduct without actually offering the facts necessary to support that inference. And while it may be true that a plaintiff's "burden in establishing standing is lightened considerably" at the pleading stage, *Petrella v.*

---

[2]  Courts have often analyzed the question of geographic proximity in relation to the injury-in-fact requirement. *See, e.g., Lujan*, 504 U.S. at 565. Here, though, given Plaintiff's allegation that drilling on and near the Grasslands has been increasing in recent years, I believe the appropriate question is less whether members' aesthetic enjoyment has in fact been reduced by these operations in general and more whether it has been reduced by the APDs at issue in this case; in other words, the question is whether their injury was actually caused by—i.e., traceable to— the conduct challenged here or to the conduct of some other action. Whichever prong it is analyzed under, however, the analysis is essentially the same.

- 9 -

*Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012), it is axiomatic that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Kan. Nat. Res. Coal. v. U. S. Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020) (cleaned up).

Without more factual detail explaining what it means by "areas in proximity to the drilling sites of the Colorado APD decisions," Dkt. 1 ¶ 24, it is impossible to say whether Plaintiff has shown enough of a geographic nexus between its members' visits to the Grasslands and the challenged drilling operations.[3] *See Lujan*, 504 U.S. at 565–66 ("[A] plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly in the vicinity of it." (internal quotation marks omitted)); *see also Ctr. for Biological Diversity v. U. S. Env't Prot. Agency*, 937 F.3d 533 (5th Cir. 2019) ("[P]etitioners cannot simply assert some interest somewhere within a large geographic area. The Court emphasized it must 'assure itself that' members of the plaintiff associations 'plan to make use of the specific sites' where environmental effects would allegedly be felt." (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)). That is especially so considering Plaintiff's allegations that "the federal lands in the Pawnee National Grassland are increasingly being drilled and fracked from adjacent private lands" and that the Grasslands contain over 300

---

[3] This is not to agree with Defendants' statement "Plaintiff must therefore allege facts establishing the area affected by each challenged APD." Dkt. 9 at 10. A plaintiff may show geographic nexus by alleging he visits specific areas affected by the challenged conduct without necessarily defining the precise scope of the challenged conduct (which would, in any event, likely be a Sisyphean task given the interconnectedness of ecosystems and the amount of distance that polluted air can travel). *See Dine Citizens*, 923 F.3d at 831–43. Geographic proximity also does not require that a "plaintiff [] show it has traversed each bit of land that will be affected by a challenged agency action." *Id.* at 842 (quotation marks omitted).

square miles of "interspersed federal public and private lands" including "193,060 acres of public lands spread out across two administrative units." Dkt. 1 ¶ 5, 77.

To be clear, that is not to say that the presence of other drilling operations necessarily defeats standing as to the APDs challenged in this case. The Tenth Circuit has explicitly held that "the existence of other contributors wouldn't affect [plaintiff's] standing. Even with other contributors, standing would still turn on whether [plaintiff] had adequately attributed the pollution at least partly to the [challenged conduct]." *Sierra Club v. U. S. Env't Prot. Agency*, 964 F.3d 882, 889 (10th Cir. 2020). Here, however, the issue is not simply that other operations are already contributing to pollution in the area, it is that there is no way to determine whether the challenged conduct is actually the source of the injury alleged. That is due in part to the fact that the Pawnee National Grasslands encompass hundreds of thousands of acres, in part because Plaintiff has only offered conclusory allegations of "proximity" to the challenged APD sites, and in part because Plaintiff alleges that drilling operations are already relatively widespread in the Grasslands. Under these circumstances, it is not possible to say that the injury claimed here is "fairly traceable" to the conduct challenged in this case. *See Utah Physicians*, 21 F.4th at 1245 ("By showing a close geographical connection, the plaintiff has 'adequately attributed the pollution' to the source, and the injury is 'fairly traceable' to the polluter." (internal citations omitted)).

*Dine Citziens* is a useful example of what might suffice. The court there found that the Plaintiff had demonstrated standing based on allegations showing a "geographic nexus to the affected areas," based on detailed affidavits that went far beyond the conclusory allegation of proximity at issue in this case. 923 F.3d at 841. These affidavits included

- 11 -

allegations that the members had "visited hundreds of well sites in the [relevant] area, and ha[d] frequented lands where many other [of the challenged] wells are in view;" that there was a "major increase in Halliburton trucks along [Highway] 550, and at the intersection of 7900 and 7950, trucks are staging right off the highway and even on the county road blocking traffic;" and that, along Highway 550, there was "air pollution from gas flares at wells and large amounts of exhaust from the oil and gas company trucks and heavy equipment." *Id*. at 842. "Further, maps in the record indicate the geographic proximity of challenged APD sites to specific areas referenced in Appellants' affidavits." *Id*. at 843. *See also* 24-cv-02164-DDD-SBP, Dkt. 47 at 6–11 (noting detailed allegations supported by multiple affidavits). In this case, by contrast, no affidavits were submitted, and the only allegation potentially supporting geographical nexus is the bare, conclusory assertion that Plaintiff's members visit sites in proximity to the challenged well sites. That is notably different from what was provided to the court in *Dine Citizens* and appreciably less than what is required by Article III.[4]

### III. Motions to intervene

Plaintiff does not oppose the motions to intervene filed by Bison Oil & Gas IV, LLC and Verdad Resources LLC. Dkt. 13 at 1. And given that Bison Oil and Verdad Resources are owners of some of the APDs at issue in this case, they clearly have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The motions to intervene, Dkt. 10 and 11, are therefore

---

[4] Plaintiff's claim with respect to Permanent Instruction Memorandum 2018-14 rises and falls with its claim related to the challenged APD approvals. Plaintiff has not alleged that it has suffered any independent, concrete injury attributable to the Memorandum beyond what it has suffered as a result of the APD approvals. It is thus unnecessary to separately address this claim.

- 12 -

granted. In light of the early stage of this case, however, the fact that Plaintiff has been given leave to amend its complaint, and the fact that it is not yet clear whether Bison Oil and Verdad Resources' defenses will entirely overlap, Plaintiff's request for them to submit joint briefing is denied for the time being. To the extent it appears that joint briefing is warranted as this case progresses, however, Plaintiff may renew this request at that later time.

## CONCLUSION

It is **ORDERED** that:

Bison Oil's and Verdad Resources' Motions to Intervene, **Dkt. 10** and **11**, are **granted** and

Defendants' Motion to Dismiss, **Dkt. 9**, is **granted**, and Plaintiff is given leave to file an amended petition within **two weeks** of this order.

DATED: May 28, 2025     BY THE COURT:

Daniel D. Domenico
United States District Judge